IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARCHIE TINDELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-1230 |
| | ) | |
| v. | ) | Judge McVerry |
| | ) | Magistrate Judge Bissoon |
| JEFFREY A. BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants (Doc. 73) be granted.

### II. REPORT

This is a prisoner civil rights case in which Archie Tindell alleges that he was subjected to a retaliatory cell search and confiscation of his legal materials on May 16, 2007, and that he was subjected to the use of excessive force by Lt. Crumb during the cell search. The remaining Defendants[1] have filed a Motion for Summary Judgment (Doc. 73). Plaintiff has responded (Doc. 82) and it is ripe for disposition.

**A. Legal Standard**

A party's burden in response to a well-pleaded motion for summary judgment is to present "'. . . specific facts showing that there is a *genuine issue for trial*'" Fed. Rule Civ. Proc. 56(e) (emphasis added), or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,

---

1. On June 30, 2008, the Court granted Motions to Dismiss with respect to all claims except the claim of excessive force against Defendant Crumb, and the claim of retaliation against Defendants Leggett, Crumb, Reposky, Ruvo and Caldwell (Doc. 38).

475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., 477 U.S. at 251-52.

B. **Analysis**

    1.    **Retaliation claims.**

"Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). In order to state a *prima facie* case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). To show an "adverse action," Plaintiff must demonstrate that Defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002) quoting Allah v. Seiverling, 229 F.3d at 225. Even where a *prima facie* case of retaliation has been made, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Rauser, 241 F.3d at 334.

Plaintiff alleges in his Complaint that Defendants placed him on "property restriction" on May 16, 2007, pursuant to which all of the personal property in his cell was removed and inventoried (Doc. 1, Ex. A, ¶¶ 18-20). He alleges that the property, contained in two boxes in his cell, was "broken down" into four boxes and returned to him on May 17, 2007 (Id., ¶ 21). This occurred, Plaintiff asserts, because of "civil litigations" he filed against Defendants (Id., ¶ 29).

Defendant Captain Leggett attests in an affidavit that he noticed on May 16, 2007, that Plaintiff had more than the permitted two boxes of personal property in his cell (prisoners are entitled to one box normally, but Plaintiff was permitted two due to an ongoing court case) (Doc. 74, Ex. F, ¶ 5). Captain Leggett ordered the remaining Defendants to conduct a property inventory after Plaintiff refused to voluntarily designate items of his property to be removed to an alternate storage room (Id., ¶¶ 4-5). Captain Leggett states that the inventory was done on his orders, and that he acted solely on the basis of his belief that Tindell was not in compliance with institutional rules (Id., ¶¶ 7-8). Defendants have also provided a video of the actual property inventory, showing Lt. Crumb, and Defendants Reposky, Ruvo and Caldwell, removing Plaintiff from his cell, and then removing all personal property from the cell (other than essentials such as linens and toilet paper) (Doc. 74, Ex. A). The video shows Defendants removing two apparently full boxes from Plaintiff's cell, as well as various additional items, including a stack of several books (Id.). Captain Leggett attests that the property taken from the cell was returned within "a few days" (Doc. 74, Ex. F, ¶ 7). Indeed, Plaintiff alleged in his Complaint that it was returned the following day (Doc. 1, Ex. A, ¶ 21).

Although prison inmates retain certain rights, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348

(1987) (quotations omitted). Plaintiff does not assert that he has the right to keep an unlimited amount of personal belongings in his cell. Instead, he argues that he was within the applicable regulation, and that the property inventory was not necessary and was, in fact, in retaliation for prior lawsuits he filed.

First, Plaintiff's assertion that he was in compliance with prison regulations, if true, might give rise to an inference that there was some other motivation for the inventory ordered by Captain Leggett. However, as illustrated by the quantity of items removed as observed on the video, Captain Leggett clearly had a reasonable basis for believing that Plaintiff had more than the permitted amount of personal property in his cell.

Second, the fact that Plaintiff filed prior lawsuits against Department of Corrections personnel also is not sufficient to permit a reasonable finder of fact to determine that Defendants acted with an improper motive. Captain Leggett ordered the inventory, and he attests that he acted only on the basis that Plaintiff had more personal property that he was permitted to have in his cell. As noted above, the video of the removal of items from Plaintiff's cell certainly supports Captain Leggett's assertion. Further, Captain Leggett denies that he acted with a retaliatory motive, as do each of the remaining Defendants, who were following Captain Leggett's orders in performing the inventory of property. Plaintiff has simply not presented evidence, aside from his own personal belief, from which a reasonable jury could find that his prior lawsuits motivated the inventory of the personal property in his cell.

And, in any event, the mere fact that Plaintiff's personal property was inventoried on one occasion, and that he was deprived of his papers and other personal effects for a few days, is not enough to establish an "adverse action" for purposes of a retaliation claim. The Court does not

believe that a "person of ordinary firmness" would be deterred in exercising their constitutional rights by such an event. Plaintiff's claim fails on this basis as well.

Finally, Defendants also have presented indisputable evidence that Plaintiff did, in fact, have more than the permitted amount of personal possessions in his cell, and that this motivated their actions. Thus, Defendants are entitled to summary judgment in this case even if Plaintiff established a *prima facie* case of retaliation, since they have presented compelling evidence that they would have acted the same even absent any retaliatory motive.

**2. Excessive force.**

Plaintiff alleges that, after the inventory of his property, and in the process of his being placed back into his cell, Lt. Crumb forcefully yanked on a tether attached to Plaintiff's handcuffs, causing cuts, bleeding and swelling on Plaintiff's wrists. Defendants, as noted above, have provided a video of the entire incident (Doc. 74, Ex. A). The video shows Plaintiff placing his hands in the food slot on the cell door, and his hands are then handcuffed behind his back. A leather tether is attached to the cuffs and held by one of the guards, who then leads Plaintiff from the cell. After Plaintiff's property is inventoried, Plaintiff is again placed in his cell, and he is directed by Lt. Crumb to put his hands in food slot, so that the handcuffs can be removed. Plaintiff is seen turning to his right, at which point Lt. Crumb directs him to comply, and appears to pull on the tether (the tether is out of view). Plaintiff is clearly forced by Lt. Crumb's action to turn his back as his hands are drawn toward the wicket, but there is no indication in the video that the force was sufficient to cause Plaintiff any visible distress.

Lt. Crumb attests in an affidavit that Plaintiff, in turning to the side, was not being compliant with the order to allow the handcuffs to be removed, and that he used only the force necessary to draw Plaintiff's hands to the required position (Doc. 74, Ex. C, ¶¶ 9-10). A medical

assessment was done immediately after the incident, and Plaintiff had no visible swelling or injuries on his right wrist, but he did complain of pain in his right shoulder (Doc. 74, Ex. D).

The Eighth Amendment protects inmates against cruel and unusual punishment, but it does not protect an inmate against every minimal use of force. Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir.2002). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)) ("Not every push or shove, even if it may later seem unnecessary . . . violates a prisoner's constitutional rights").

In an Eighth Amendment excessive force claim, summary judgment in favor of a defendant is appropriate where the evidence, viewed in the light most favorable to the Plaintiff, does not support "a reliable inference of wantonness in the infliction of pain." Thomas v. Ferguson, 361 F.Supp.2d 43, 438 (N.J.2004) (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). The central inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Mensinger, 293 F.3d at 649. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Brooks v. Kyler, 204 F.3d 102, 108-109 (3d Cir.2000).

No reasonable finder of fact could view the video of this incident and find that Lt. Crumb acted maliciously or sadistically to cause harm to Plaintiff. The video makes clear that Plaintiff, rather than standing still to permit the handcuffs to be removed, turned to his side and began making (not entirely audible) statements to Lt. Crumb. Lt. Crumb ordered Plaintiff to comply just prior to pulling on the tether. Of course, even Plaintiff's initial failure to comply would have been sufficient to warrant some use of force in order for Lt. Crumb to place his hands in the

necessary position. Thus, there was clearly a justification for the use of some force, and the amount of force used was clearly reasonable under the circumstances. It is certainly not such that a reasonable jury could make the necessary inference of malice and intent to cause pain.

### III. CONCLUSION

For all of the foregoing reasons, it is recommended that the Motion for Summary Judgment filed by Defendants (Doc. 73) be granted. In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by May 21, 2009.

s/ Cathy Bissoon<br>
Cathy Bissoon<br>
United States Magistrate Judge

Date: May 4, 2009

cc:
**ARCHIE TINDELL**
EW-6464
SCI Pine Grove
191 Fyock Road
Indiana, PA 15701